In the Matter of TESSIM ZORACH et al., Petitioners, against ANDREW G. CLAUSON, JR., et al., Constituting the Board of Education of the City of New York, et al., Respondents.

Supreme Court, Special Term, Kings County, June 13, 1949.

*Kenneth W. Greenawalt* for petitioners.

*Charles H. Tuttle, Porter R. Chandler* and *Louis M. Loeb* for Greater New York Co-ordinating Committee on Released Time of Jews, Protestants and Roman Catholics, intervener, respondent.

WALSH, J.   In an article 78 proceeding pending in this court, the Greater New York Co-ordinating Committee on Released Time of Jews, Protestants and Roman Catholics, an unincorporated committee composed of an equal number of prominent Jewish, Protestant and Roman Catholic laymen, moves for an order permitting it to intervene and become a party respondent therein, contending that it is specially and beneficially interested.

The proceeding in which intervention is sought is directed against respondents Commissioner of Education of the State of New York and the board of education of the city of New York.   The relief sought is the termination and discontinuance of the " released time " program and the abrogation and rescission of the regulations made by the respondents pertaining thereto, by means of which public school pupils are permitted to be released for not more than one hour weekly upon request of their parents to attend, outside school buildings and grounds, classes in religious observance and instruction.   Such program is challenged on the ground that it contravenes the provisions of the First and Fourteenth Amendments to the Federal Constitution and section 3 of article I of the New York State Constitution.

The respondents constituting the board of education of the city of New York and the Commissioner of Education of the State of New York do not oppose the motion.

Upon the record before me, this movant has presented a sufficient showing within the provisions of section 1298 of the Civil Practice Act warranting this court in the exercise of its discretion to permit the intervention prayed for.   Section 1298 of article 78 of the Civil Practice Act provides, in part, as follows: " Upon the application of a person specially and beneficially interested in upholding or annulling a determination to be reviewed, the court, in its discretion, may admit him as a party in the special proceedings upon such terms as justice requires."

The Greater New York Co-ordinating Committee was organized for the purpose of furthering this program of " released time ".   It participates in sponsoring the conduct of such program and issues advice and information to various religious groups in establishing centers of religious instruction outside school buildings and grounds where, in accordance with the election and designation of parents, children who are excused under such program may attend classes in sectarian religious instruction.   The function of the committee is to co-ordinate on an interfaith basis the crystalization of the program in religious centers.

So far as the court is aware, it is the only organization which performs such function and it is recognized for that purpose by substantially all participating local religious organizations: Jewish, Protestant and Catholic. It has a direct and immediate concern in the subject of this proceeding and is substantially and beneficially interested in upholding the refusal of the respondents to discontinue the " released time " program. That it has such a direct and immediate concern becomes obvious when reference is made to the petition itself. Paragraphs " Tenth " and " Eleventh " thereof make allegations concerning the Co-ordinating Committee and specify it by name as part of the operation of the plan which petitioners seek to enjoin. These paragraphs read as follows:

" Tenth: On information and belief: The released time program in New York City is under the supervision of an organization known as the Greater New York Coordinating Committee on Released Time (hereinafter referred to as the Coordinating Committee). The coordinating Committee was formed to promote religious instruction through use of the public school system, and cooperates closely with the public school authorities in the management of the program and in promoting religious instruction.

" Eleventh: On information and belief: Said released time program in New York City operates as follows: The Coordinating Committee or church authorities distribute either to parents of public school children at home or in churches or to public school children at or near the public school premises, cards for signatures to indicate the parent's approval to his child's being released for sectarian religious instruction during school hours. Children whose parents sign such cards deliver them to the public school authorities and they in turn deliver lists of the children whose parents so consent to the Coordinating Committee or to the religious centers. These children are released regularly for one hour each week from attendance at public school on condition that they attend during the released hour at the religious center for sectarian religious instruction. Parents who sign such consent cards thereby enter into an agreement with the public school authorities in consideration of their children being released from attendance at regular public schools, that their children will attend and receive sectarian religious instruction at the religious centers. Children whose parents do not sign consent cards are separated from the other children and are required to continue in attendance at the public school. The children who are released receive

sectarian religious teaching in the faith of the center which they attend. At weekly intervals the religious centers file with the public school system and the Coordinating Committee a list of the children who have been released from public school but have not reported for religious instruction at the religious center.''

Although the committee disputes the accuracy of some of the alleged details, in view of these allegations, the committee justifiably moves to be made a party respondent in this proceeding.

It is significant to note that in a similar proceeding, namely, *People ex rel. Lewis* v. *Spaulding* (193 Misc. 66)\*, decided by Special Term, Albany County, the movant herein, after a formal notice of motion, such as is now presented, was granted leave to intervene and became a party respondent therein. This court apprehends no perceivable distinction between that proceeding and the one at bar. Whether or not an article 78 proceeding may be disposed of by affidavits, as in the *Lewis* case (*supra*), or by trial of the issues, as undoubtedly will be required here, is of no moment. Section 1298 encompasses no such distinction.

Moreover, no delay in an early trial and final disposition of this proceeding will result from the granting of the relief prayed for since it appears that the respondents have not as yet served their answers to the petition.

The objections raised in opposition to this motion that the movant can fully and adequately protect its rights as an *amicus curiæ* and that such intervention would not be desirable as a practical matter are without force and do not require extended discussion.

The possibility that others, who are specially and beneficially interested, may seek to intervene is not sufficient reason for denying all of the applications or the first application. The possibility that others not similarly situated may seek to intervene is not a valid reason for denying this motion.

A more serious objection is the one urged that the movant is not in a position as a matter of law to seek intervention within the provisions of section 1298 of the Civil Practice Act. Such objection is predicated on the ground that section 1298 permits intervention only in a situation where an article 78 proceeding

---

\* In the *Lewis* case (*supra*), by decision dated November 12, 1948, Mr. Justice ELLSWORTH in the Supreme Court, Albany County, sustained the constitutionality of the "released time" program in New York City and State, and dismissed the petition. After the submission of briefs by counsel in the Court of Appeals, petitioner announced through counsel his intention of withdrawing and discontinuing said appeal.

is brought to review a determination and not, as is here claimed, where the proceeding is to compel the performance of a duty specifically enjoined by law or where prohibition is prayed for. I cannot agree with such narrow and rigid interpretation of the provisions of section 1298. The words " upholding or annulling a determination to be reviewed " are to be taken in their generic sense and must be held to be applicable to all proceedings under this article. This conclusion is supported by the heading of section 1298 which reads, " Bringing in third person "; and being the only section in article 78 which provides for intervention, it must have been the intent of the Legislature to encompass every and all proceedings which may be brought under this article. To delimit the application of this section only to a proceeding formerly known as certiorari would preclude intervention in a great number of proceedings brought under this article founded upon those formerly known as prohibition and mandamus. Such a construction obviously was not within the intendment of the Legislature. A primary purpose of article 78 was to abolish the classification and writs of certiorari to review, mandamus and prohibition (§ 1283). The last sentence of section 1284 is particularly pertinent. It reads: " Nothing in this article shall be deemed to continue or establish distinct remedies." The whole purpose of the article is to provide a proceeding against a body or officer, and section 1298 should not be limited to some particular writ which heretofore existed but which has been abolished by this article.

In reaching this conclusion this court is not unmindful of an apparently contrary holding in *Matter of Cappon* v. *Cleere* (177 Misc. 1027), wherein Special Term, Ontario County, held that intervention may not be had in a proceeding under article 78 brought for the purpose of compelling the performance of a duty specifically enjoined by law.

It should be first observed that this court cannot hold that the relief sought in the petition is limited merely to compelling the performance of a duty. In this proceeding it is admitted that there is a duly enacted State law under which released time operates. Significantly, there is certainly no law which specifically enjoins the performance of a duty to the contrary. The primary purpose of this proceeding is to determine the constitutionality of the existing law and if it is found unconstitutional, then to prohibit the program of released time under the existing law and to rescind and abrogate rules and regulations made pursuant thereto. In the circumstances and in the absence of a controlling appellate authority, the conclusion herein

expressed is deemed more in consonance with the broader legislative intent than the case cited.

Accordingly, this application is in all respects granted and the Greater New York Co-ordinating Committee on Released Time of Jews, Protestants and Roman Catholics is admitted as a party respondent in the above-entitled proceeding, with leave to serve an answer within ten days after service of a copy of the order to be entered hereon with notice of entry thereof and be heard on all subsequent proceedings that may be had. Section 1298 permits the imposition of terms upon the granting of an application of this kind. However, the movant has voluntarily consented that the order on the decision embrace a provision that in the event that petitioners be unsuccessful upon the trial of the proceeding, no costs or disbursements be granted against them and in favor of this intervener, respondent.